IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | | |
|---|---|---|
| **GENERAL ELECTRIC CAPITAL CORPORATION,** | : | |
| Plaintiff, | : | |
| vs. | : | 5:06-CV-133 (CAR) |
| **NUCOR DRILLING, INC.**, a Georgia corporation, and **JAMES JONES**, individually, a resident and citizen of Georgia, | : | |
| Defendants. | : | |

*ORDER ON MOTION FOR SUMMARY JUDGMENT*

Before the Court is Plaintiff General Electric Capital Corporation's ("GE Capital") Motion for Summary Judgment [Doc. 31]. Defendants, proceeding *pro se*, filed a Response [Doc. 34] to the Motion.[1] For the reasons stated below, Plaintiff's Motion for Summary Judgment is **GRANTED in part** and **DENIED in part**.

## BACKGROUND

GE Capital filed this breach of contract case pursuant to this Court's diversity jurisdiction. GE Capital asserts that Defendant Nucor Drilling, Inc. ("Nucor") is in default for failure to pay amounts due under a Master Security Agreement and Promissory Note, and Defendant James Jones ("Jones"), president of Nucor, is liable under the Guaranty. Taking the facts in the light most favorable to the non-moving party–Defendants in this case–the facts reveal the following:

---

[1] Although Defendants entitled their filing "Defendant [sic] Motion for Summary Judgment In Support of Motion for Summary Judgment Against Plaintiff," the Court construes this filing as a Response to GE Capital's Motion for Summary Judgment, rather than a cross-motion for summary judgment.

On or about December 30, 2005, Defendant Nucor entered into a Master Security Agreement ("Security Agreement") with GE Capital wherein GE Capital loaned Nucor $1,845,000.00, and, as security for the loan, Nucor granted GE Capital a security interest in its various heavy drilling and other equipment ("Equipment"). The Equipment had been appraised in December 2005 at an estimated fair market value-installed at $1,845,000.00, and estimated orderly liquidation value at $1,510,000.00. In accordance with the loan, Nucor executed a Promissory Note ("Note") in which it agreed, commencing on February 2, 2006, to pay its financial obligations in 59 consecutive monthly installment payments to GE Capital in the amount of $27,634.21. In addition, Nucor agreed to make a balloon payment in the amount of $797,958.40. In conjunction with the Security Agreement and Note, Defendant Jones executed an Individual Guaranty ("Guaranty"), guaranteeing the obligations of Nucor under the Security Agreement and the Note.

Nucor failed to make any payments to GE Capital, and thereby defaulted on the Security Agreement and the Note. GE Capital sent written notices of the default to Nucor and made demand upon Nucor to immediately cure the payment default. Based upon Nucor's default, GE Capital accelerated the entire amounts due under the Security Agreement and the Note.

<u>GE Capital's Repossession and Sale of the Collateral</u>

Between February and March 2006, after receiving notice of Nucor's default and demand to cure, Jones spoke with GE Capital and volunteered to return the Equipment to whatever location GE Capital preferred at no cost to GE Capital. GE Capital refused. Jones states that no one at Nucor operated or ran the Equipment after this time, and the Equipment was in good condition.

Instead of allowing Jones to return the Equipment, GE Capital hired Coldiron Asset Recovery ("Coldiron") to repossess the Equipment. Between April 2006 and July 2006, Coldiron

repossessed the Equipment for GE Capital from various job sites located in Georgia (Columbus, Forest Park, Griffin, Macon, and Rome) and Tennessee (Chattanooga) and transported the machines to Montgomery, Alabama. Jones maintains that the Equipment was damaged during this repossession and transport because it was performed by individuals who did not know how to operate the machines. Coldiron incurred fees of $59,329.00 in repossessing and transporting the Equipment.

GE Capital engaged Value-Centers, LLC ("Value-Centers") in Montgomery, Alabama to conduct a private sale of the Equipment. Between April 2006 and July 2006, the Equipment was delivered to Value-Centers for auction. Value-Centers prepared condition reports for each piece of the Equipment as it was delivered. The condition reports indicate that various items of the Equipment were in poor to very poor conditions and were missing many parts and components. Value-Centers appraised the Equipment prior to the private sale at $250,000.00. GE Capital incurred fees of $2,000.00 for Value-Centers' inspection and valuation of the Equipment.

GE Capital also hired Hunyady Appraisal Services ("Hunyady") to inspect the Equipment. Hunyady's written report indicated that the Equipment was in fair to poor condition, was missing components, appeared to have been stripped for specific components, and had been left exposed to the elements. Hunyady concluded that the sale of the Equipment would be for salvage. GE Capital paid $1,313.50 for Hunyady's inspection.

On June 30, 2006, counsel for GE Capital sent Nucor and Jones a Notice of Private Sale wherein GE Capital provided notification of its repossession of the Equipment and GE Capital's intent to conduct a private sale. Prior to the sale, Jones states that he sent Value-Centers a list of approximately 40 people that were looking for the types of machines that were going to be auctioned

3

and would like for those people to receive notice of the sale. Jones states that none of those individuals received notice of the sale. On August 28, 2006, Value-Centers conducted the private sale. Value-Centers advertised the sale in the Machinery Trader, the largest trade publication for this type of equipment. Value-Centers solicited bids from potential purchasers first by bulk bid and then by piecemeal bids. Although Value-Centers received multiple written bids for the Equipment, many potential buyers refused to submit purchase bids after conducting visual and mechanical inspections of the Equipment. Value-Centers sold the Equipment to Summit Power & Supply, Inc. for $407,000.00, which was the highest bid received for the Equipment.

Jones maintains that the sale of the Equipment was not properly advertised to drilling companies.

At the time of the sale, the outstanding principal balance under the Note was $1,845,000.00. GE Capital incurred fees in the amount of $6,650.00 as a result of processing and preparing the Equipment for distribution, and sale commission fees in the amount of $32,560.00 for Value-Centers' sale of the Equipment. GE Capital contends that after the private sale of the Equipment, application of the sale proceeds to the Note, application of the $369,267.33 security deposit to the Note, and the addition of its repossession and sale expenses to the Note, a deficiency balance remains in the principal amount of $1,170,648.17, excluding accrued interest and late charges.

**STANDARD OF REVIEW ON SUMMARY JUDGMENT**

Summary judgment must be granted if "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Johnson v. Clifton, 74 F.3d 1087, 1090 (11th Cir. 1996). Not all factual disputes render summary judgment inappropriate; only a genuine issue

4

of material fact will defeat a properly supported motion for summary judgment. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). This means that summary judgment may be granted if there is insufficient evidence for a reasonable jury to return a verdict for the nonmoving party or, in other words, if reasonable minds could not differ as to the verdict. See id. at 249-52.

In reviewing a motion for summary judgment, the court must view the evidence and all justifiable inferences in the light most favorable to the nonmoving party, but the court may not make credibility determinations or weigh the evidence. See id. at 254-55; see also Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact" and that entitle it to a judgment as a matter of law. Celotex, 477 U.S. at 323 (internal quotation marks omitted).

If the moving party discharges this burden, the burden then shifts to the nonmoving party to go beyond the pleadings and present specific evidence showing that there is a genuine issue of material fact (i.e., evidence that would support a jury verdict) or that the moving party is not entitled to a judgment as a matter of law. See Fed. R. Civ. P. 56(e); see also Celotex, 477 U.S. at 324-26. This evidence must consist of more than mere conclusory allegations or legal conclusions. See Avirgan v. Hull, 932 F.2d 1572, 1577 (11th Cir. 1991). Summary judgment must be entered where "the nonmoving party has failed to make a sufficient showing on an essential element of [her] case with respect to which [she] has the burden of proof." Celotex, 477 U.S. at 323.

**DISCUSSION**

Defendant Nucor

It is clear that GE Capital is entitled to summary judgment regarding Nucor's liability under the Security Agreement and the Note. Summary adjudication of a contract action is appropriate where the terms of the contract are plain, unambiguous, and clearly express the intention of the parties. Parker v. Georgia Receivables, Inc., 215 Ga. App. 624, 625, 451 S.E.2d 538 (1994); see also Dixie Groceries, Inc. v. Albany Bus. Mach., Inc., 156 Ga. App. 36, 274 S.E.2d 81 (1980) (no construction of a contract is required, or even permissible, when the language employed by the parties to a contract is plain, unambiguous, and capable of only one reasonable interpretation).

Here, the terms of the Security Agreement and the Note are clear, unambiguous, and not subject to interpretation that Nucor was required to make 59 consecutive monthly installment payments to GE Capital in the amount of $27,634.21 each, commencing on February 2, 2006, with a balloon payment in the amount of $797,958.40. Nucor does not dispute that it failed to make a single payment due under the Security Agreement and the Note. The Security Agreement defines default as when "Debtor fails to pay within 10 days after its due date any installment or other amount due or coming under any of the Debt Documents." Thus, Nucor is in breach of the contract, and GE Capital is entitled to summary judgment against Nucor.

Defendant Jones

*Liability*

GE Capital is also entitled to summary judgment regarding Jones's liability under the Guaranty. A guarantor is bound to the terms of the contract which he guarantees. Arnold v. Indcon, L.P., 219 Ga. App. 813, 466 S.E.2d 684 (1996). Where a guaranty conclusively shows

that it applies to a promissory note, which has been breached, liability is extended to the personal guarantor. See Reese v. Chestatee State Bank, 260 Ga. App. 136, 138, 579 S.E.2d 11 (2003). When signatures are admitted or established, production of the instrument entitles a holder to recover unless the defendant establishes a defense. Bank South v. Jones, 185 Ga. App. 125, 364 S.E.2d 281 (1987).

In the instant case, it is undisputed that Jones executed a Guaranty of the Security Agreement and the Note, that the Guaranty clearly refers to the Security Agreement and the Note– which have been breached–and that the Guaranty clearly defines Jones's obligations:

> To induce you to enter into . . . any promissory notes, security agreement . . . and/or any other documents or instruments evidencing, or relating to, any lease, loan, extension of credit or other financial accommodation (collectively "Account Documents") to Nucor Drilling , Inc. ("Customer") . . . the undersigned, for good cause and valuable consideration, the receipt and sufficency of which is hereby acknowledged, does hereby guarantee to you, your successors and assigns, the due regular and punctual payment of any sum or sums of money which the Customer may owe to you now or at any time hereafter, whether evidenced by an Account Documents, an open account or otherwise, and whether it represents principal, interest, rent , late charges, indemnities, an original balance, an accelerated balance, liquidated damages, a balance reduced by partial payment, a deficiency after sale or other disposition of any leased equipment, collateral or security . . . . Undersigned does hereby further guarantee to pay upon demand all losses, costs, attorneys' fees and expenses which may be suffered by you by reason of Customer's default or default of the undersigned.

Jones does not dispute that the Guaranty applies to the Security Agreement and the Note, nor does he dispute that once Nucor defaulted by failing to make the required payments, liability for the obligations on the Security Agreement and the Note extended to him. Because he failed to fulfill his obligations under the Guaranty by failing to make the required payment, Jones is in breach of the Guaranty. Thus, GE Capital is entitled to summary judgment against Jones as to liability.

*Damages*

GE Capital, however, is not entitled to summary judgment regarding the amount of damages owed because this Court finds genuine issues of material fact as to whether GE Capital reasonably mitigated its damages. Generally, "[w]here by a breach of contract a party is injured, he is bound to lessen the damages as far as is practicable by the use of ordinary care and diligence." O.C.G.A. § 13-6-5; Central Nat. Ins. Co. v. Dixon, 188 Ga. App. 680, 682, 373 S.E.2d 849 (1988). In other words, as a general rule, a party injured by a breach of contract has a duty to mitigate its damages. Boone v. Atlanta Indep. Sch. Sys., 275 Ga. App. 131, 135, 619 S.E.2d 708 (2005) (citation omitted). However, the duty to mitigate is applicable only where the damages can be lessened by reasonable efforts and expense. Dixon, 188 Ga. App. at 682.

Georgia courts have recognized three exceptions to this duty to mitigate in breach of contract actions: (1) fraud; (2) breach of an express warranty; and (3) an "absolute promise to pay." Wachovia Bank of Georgia, N.A. v. Namik, 275 Ga. App. 229, 233, 620 S.E.2d 470 (2005). It appears, however, that none of the exceptions applies in this case, and GE Capital has presented no such evidence to the Court otherwise. See Midway Ry. Constr. Co., Inc. v. Beck, 281 Ga. App. 412, 414, 636 S.E.2d 110 (2006). Moreover, a plaintiff is not relieved of the duty to mitigate damages simply because the contract contains a liquidated damages provision. AFLAC v. Williams, 264 Ga. 351, 354, 444 S.E.2d 314 (1994). Georgia law also requires that the contention that one has failed to comply with the duty to mitigate damages "be supported by evidence from which the factfinder could reasonably estimate the amount by which damages could have been mitigated." Leventhal v. Seiter, 208 Ga. App. 158, 163-64, 430 S.E.2d 378 (1993) (citation and internal quotation marks omitted).

8

In this case, Jones has sufficiently raised genuine issues of material fact as to whether GE Capital reasonably mitigated its damages. Jones raises questions of fact regarding the costs incurred to GE Capital in moving the Equipment and the valuation of the Equipment. For example, in his deposition, Jones testified that he told GE Capital in February or March of 2006, soon after Nucor's default on the loan, that he would voluntarily transport the Equipment to whatever location GE Capital preferred at no cost to GE Capital. According to Jones, GE Capital refused his offer. This testimony raises issues of fact as to whether the $59,329.00 cost incurred by GE Capital in repossessing and transporting the Equipment could have been reduced or avoided altogether.

Moreover, Jones's raises factual questions regarding the valuation of the Equipment. The appraisal of the Equipment performed in December of 2005, valued the Equipment at $1,845,000.00 fair market value-installed and $1,510,000.00 orderly liquidation value. Jones testified that no one operated the Equipment from February or March of 2006, and the Equipment was in good condition at that time. GE Capital repossessed and delivered the Equipment to Value-Centers between April and July 2006. As each piece was delivered, Value-Centers prepared condition reports. The condition reports indicated that the Equipment was in poor to very poor condition, valuing the Equipment at only $250,000.00. A jury could reasonably find that had GE Capital repossessed and sold the Equipment when Jones volunteered to deliver the Equipment in February or March of 2006, rather than in June or July of 2006, a higher price could have been received for the Equipment. Finally, Jones raises genuine issues of material fact regarding whether GE Capital properly advertised the sale of the Equipment in order to bring top price.

The Court points out that Jones carries the burden of proof to show that GE Capital could have lessened its damages; such proof must include sufficient data to allow the jury to reasonably estimate the amount by which the damages could have been mitigated. Leventhal, 208 Ga. App. at 163-64.

## CONCLUSION

For the reasons explained above, Plaintiff's Motion for Summary Judgment [Doc. 31] is **GRANTED in part** and **DENIED in part**. The Court grants GE Capital summary judgment against Nucor and Jones as to liability but denies summary judgment regarding damages.

**SO ORDERED,** this 18th day of March, 2008.

S/ C. Ashley Royal
C. ASHLEY ROYAL
UNITED STATES DISTRICT JUDGE

SSH/scs